# United States District Court

_____ DISTRICT OF Alaska _____

In the Matter of the Search of
(Name, address or brief deposition of person, property or premises to be searched)

1303 West 23rd Avenue, Apartment 28,
Anchorage, Alaska

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

I Mark J. Schmidt _____ being duly sworn depose and say:

I am a(n) Special Agent of the U.S. Drug Enforcement Administration and have reason to believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
1303 West 23rd Avenue, Apartment 28, Anchorage, Alaska

in the _____ District of Alaska _____
there is now concealed a certain person or property, namely (describe the person or property to be seized)
See Attachment "A"

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence

concerning a violation of Title 21 United States Code, Section(s) 841, 846
The facts to support a finding of Probable Cause are as follows:

See Attached Affadavit of Mark J. Schmidt

Continued on the attached sheet and made a part thereof:    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence,

12/15/2005 _____ at Anchorage, Alaska
Date                                                                                           City and State

U.S. Magistrate Judge John Roberts                                         EXHIBIT A PAGE 120
Name and Title of Judicial Officer                                            _____
                                                                                                    Signature of Judicial Officer

RW000000033

Case Number:

## AFFADAVIT

Mark J. Schmidt, being first duly sworn on oath, deposes and says:

**Places To Be Searched**

1. This affidavit is made in support of an application for a search warrant to search 1303 West 23rd Avenue, Apartment 28, in Anchorage, Alaska, which is located in the District of Alaska, for fruits, evidence and instrumentalities of the unlawful Distribution of Cocaine, the unlawful Possession with Intent to Distribute Cocaine, the Maintaining of a Residence or Place for the Purpose of Distributing Cocaine, and conspiracy to commit those offenses in violation of Title 21, United States Code, Sections 841 (a) (1), 846 and 856; Money Laundering in violation of Title 18 United States Code Sections 1956, 1957, and the aiding and abetting of the afore stated crimes in violation of Title 18, United States Code, Section 2.

2. I make this affidavit based, in part, on personal knowledge derived from my participation in this investigation and, in part, upon information and belief. The sources of my information and belief are: (a) oral and written reports about this and other investigations, which I have received directly or indirectly from investigators/agents of

Affidavit of Special Agent Schmidt
in Support of Search Warrant                1

EXHIBIT A PAGE

the Drug Enforcement Administration (DEA) and Anchorage Police Department (APD); (b) physical surveillance conducted by DEA and APD which was reported to me directly or indirectly; (c) debriefings of confidential informants and other witnesses, (d) physical evidence obtained by me and other law enforcement personnel from the person and vehicle of Roderick Ondra WILLIAMS and Paula Marie ROBERDS.

3. Since this affidavit is being submitted for the limited purpose of seeking authorization for the search of the residence located at 1303 West 23rd Avenue, Apartment 28, in Anchorage, Alaska, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that probable cause exists for the issuance of a search warrant. Nor, do I request that this Court rely upon any facts not set forth herein when reviewing this affidavit in support of an application for a search warrant.

**Training and Experience**

4. I am a Special Agent of the Drug Enforcement Administration (DEA), U.S. Department of Justice. I have been a Special Agent since January 1991, and have been assigned to investigate violations of federal controlled substance laws, that is, violations of Title 21, United States Code, Section 841 (a) (1) et seq. I have completed a fourteen week DEA Basic Agent Training Course as well as numerous advanced agent training courses, which included instruction and training in the investigation of

Affidavit of Special Agent Schmidt
in Support of Search Warrant                    2

EXHIBIT A PAGE 3 of 20

the manufacture and distribution of cocaine and other controlled substances and/or financial and money laundering investigations.

5. During my tenure with DEA, I have been involved in hundreds of investigations of the importation, distribution and manufacture of cocaine, heroin, marijuana and other drugs and the identification and seizure of assets used to facilitate those drug trafficking violations and assets derived there from.

6. Based upon my training, experience and participation in these and other financial/drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

a. In my experience, I have found that the distribution of cocaine is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal

controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

    b. I know that in <u>United States v. Terry</u>, F.2d 272 (9th Cir. 1990), <u>United States v. Angulo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986), <u>United States v. Hernandez-Escargega</u>, 886 F. 2d 1560, 1567 (9th Cir. 1989) and in <u>United States v. Fannin</u>, 817 F. 2d 1379, 1381-1382 (9th Cir. 1987), the court held that in the case of drug traffickers, evidence is likely to be found where dealers live and a search warrant may be properly issued against a suspected drug dealer's residence despite the lack of direct evidence of criminal activity at the residence. The court also held, in United States v. Cardoza, 769 F. 2d 625, 630 (9th Cir. 1985) that a search warrant may be properly issued to search a drug trafficker's storage locker despite lack of direct evidence linking the storage locker to criminal activity.

    c. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned books, records and ledgers etc., are frequently maintained in the drug

Affidavit of Special Agent Schmidt
in Support of Search Warrant      5

EXHIBIT A PAGE 5/12

trafficker's residence.

d. It is common for members of drug trafficking organizations to conceal in their residences and businesses in strong boxes, safes, lock boxes, concealed compartments and hidden rooms, large quantities of US currency, foreign currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds from drug trafficking

e. I know that evidence of excessive wealth is probative evidence of crimes involving greed, to include the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets themselves are evidence of drug trafficking. I also know that drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in or about their residences.

f. It is common for members of drug trafficking organizations to utilize wire transfer companies, (i.e. Western Union, MoneyGram) to facilitate the movement of US currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee senders to disguise the origination of the funds and to break up the amount being sent by any one person. I know that the actual owner of the currency will commonly provide the nominee sender with hand-written information concerning the intended recipient's name, intended pay-

Affidavit of Special Agent Schmidt
in Support of Search Warrant                6

EXHIBIT __A__ PAGE 6 of 20

out location and amounts of money to be sent. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee senders to maintain copies of the wire transfer receipts, amounts sent and tracking numbers. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence.

g. It is increasingly common for members of drug trafficking organizations to utilize direct cash deposits into a co-conspirator's bank accounts to facilitate the movement of US currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee depositors to disguise the origination of the funds and to break up the amount being deposited by any one person. I know that the actual owner of the currency will commonly provide the nominee depositor with hand-written information concerning the intended recipients name and account number and amounts of money to be deposited. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee depositors to maintain copies of the deposit slips. I also know that the aforementioned items are frequently maintained in the drug trafficker's and/or nominee depositor's residence.

h. It is common for members of drug trafficking organizations to utilize express parcel delivery companies, (i.e. Federal Express, United Parcel Service, DHL, and US

Postal Service Express Mail) to facilitate the movement of controlled substances and US currency throughout the trafficking organization's area of operations. I also know that, in an attempt to keep track of the packages and their contents, it is common for the trafficker to maintain copies of the shipping receipts and tracking numbers. I know that members of drug trafficking organizations will utilize nominee senders/recipients to disguise the origination and destination of the packages. I know that the actual owner of the drugs/currency will commonly provide the nominee sender with hand-written information concerning the intended recipient's name and address. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence.

i. It is common for members of drug trafficking organizations to utilize fraudulent identification, in order to purchase airline tickets, send wire transfers, rent residences and storage facilities and subscribe for telephone/cellular telephone service. I also know that it is common for drug traffickers to keep fraudulent identification nearby and easily accessible to facilitate their flight upon the discovery of their illegal activities by law enforcement. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence.

j. It is common for drug trafficking organizations involved in the purchase, dilution, and repackaging of cocaine for distribution to maintain equipment and supplies (i.e. scales, baggies, cutting agents) on hand over a lengthy period of time, even when

they do not have any controlled substances on hand. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence.

k. It is common for members of drug trafficking organizations to attempt to recruit couriers to transport drugs and/or US currency throughout the trafficking organization's area of operations. I know that often times the courier's handler will provide the courier with hand-written notes regarding travel itinerary, hotel information and contact telephone numbers prior to the courier departing on the trip to transport drugs and/or money. I also know that often times the organizations will pay a flat rate (i.e. $2,000 per kilogram of cocaine) plus expenses for the couriers. Therefore, often times the couriers will keep handwritten itemized lists of expenses and/or receipts, in order to be reimbursed. I also know that the aforementioned items are frequently maintained in the courier's residence or residences of members of the drug trafficking organization.

l. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry, luxury cars). I also know that the aforementioned items are frequently

Affidavit of Special Agent Schmidt
in Support of Search Warrant                9

EXHIBIT _A_ PAGE _9_ of _20_

maintained in the drug trafficker's residence.

m. It is common for members of drug trafficking organizations to possess scanners, security cameras and communications equipment (i.e. cellular telephones, pagers, fax machines and computers with Internet access) to protect and conceal their operation from law enforcement and other criminals and to monitor surveillance activities of law enforcement. Computer equipment is also used by members of drug trafficking organizations to store records related to drug trafficking and money laundering activities.

n. It is common for members of drug trafficking organizations to possess firearms and ammunition to protect their drugs, assets, and persons from rival traffickers, other criminals, and from law enforcement,

o. It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use pre-paid cellular telephones and pre-paid long distance calling cards. I know that often times the only way to connect a subject with a particular pre-paid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence.

p. It is common for members of a drug trafficking organization to attempt to legitimize their profits from the distribution of drugs. To accomplish these goals, drug

Affidavit of Special Agent Schmidt
in Support of Search Warrant          10

EXHIBIT  A  PAGE 10 of 20

traffickers utilize foreign and domestic banks and the bank's attendant services to include cashier's checks, safe deposit boxes, and money drafts. Drug traffickers will also utilize the purchase/sale of real estate to legitimize their profits. I also know that the records of the aforementioned transactions are frequently maintained in the drug trafficker's residence.

q. It is common for members of drug trafficking organizations to utilize businesses, both real and fictitious, to conceal both the distribution of drugs as well as to conceal the source of their illegal income. It is common for drug traffickers to possess business licenses and articles of incorporation for these businesses, even if the businesses exist only on paper. I also know that these records and documents are frequently maintained in the drug trafficker's residence.

r. The statutory provisions to which the current investigation relates include; (1) Title 21, United States Code, Section 841 (a) (1) and 846, the Distribution of Cocaine, the Possession of Cocaine with Intent to Distribute, as well as the conspiracy to commit those violations, and (2) Title 18 United States Code Sections 1956, 1957, Money Laundering, and conspiracies to do the same and aiding and abetting the same . I am familiar with the provisions of these statues and based upon my training and experience, I believe that the items described in this affidavit and which are sought by this application for search warrant are fruits, evidence and instrumentalities of violations

Affidavit of Special Agent Schmidt
in Support of Search Warrant                 11                    EXHIBIT A Page 11 of 20

under Title 21, United States Code, Section 841 (a) (1) and 846 and Title 18 Sections 1956 and 1957.

7. I have participated in or executed at least two hundred search and seizure warrants with respect to the manufacture and distribution of controlled substances and the investigation of money laundering. I have supplied information to support affidavits and/or sworn to affidavits for search and seizure warrants in these investigations. These search and seizure warrants have authorized the search of locations ranging from the residences and vehicles of drug traffickers and their co-conspirators to houses and structures used for the manufacture of controlled substances; and the seizure of drug-related assets pursuant to Title 21, United States Code, Section 881. Items searched for and recovered in these locations have included cocaine, methamphetamine, heroin, marijuana, US currency, foreign currency, precious metals, financial instruments, bank accounts, stock portfolios, money market accounts, airlines tickets and/or printed itineraries, money orders and their receipts, parcel service receipts, wire transfer receipts, telephone and address books, cellular telephones, pagers, calling cards, caller ID units, computers, handwritten drug ledgers/pay-owe sheets, handwritten notes regarding travel itineraries and confirmation codes, handwritten notes regarding courier instructions, handwritten notes regarding names and telephone numbers of criminal associates, receipts for distribution paraphernalia, luggage tags from prior airline trips,

Affidavit of Special Agent Schmidt
in Support of Search Warrant                    12

EXHIBIT A PAGE 12 of 20

photographs/videos showing co-conspirators, associates, drugs, money and/or weapons, fraudulent identification, birth certificates or Baptismal records showing real and/or false names, firearms and ammunition.

INVESTIGATION

8. On December 14, 2005, U.S. Magistrate Judge John D. Roberts of the United States District Court, District Of Alaska, issued a Warrant for Arrest for Roderick WILLIAMS based on a Second Superseding Indictment by a federal Grand Jury charging WILLIAMS with one count of Drug Conspiracy in violation of Title 21 United States Code, Section(s) 846, 841(a)(1) and (b)(1)(a). I received a copy of the Warrant for Arrest for Roderick WILLIAMS from the United States Marshal's Service in Anchorage on December 14, 2005. I know that, in addition to these charges, WILLIAMS is a previously convicted drug felon in the state of Alaska.

9. I spoke with Anchorage Police Detective Gordon Dorr and requested that he check Anchorage Police Department and Alaska State records to determine any possible locations where WILLIAMS might be residing. Detective Dorr told me that a girlfriend of WILLIAMS named Paula ROBERDS resided at the Romig Court Apartments, 1303 West 23rd Avenue, in apartment number 28. Based on previous surveillance, I knew that a vehicle belonging to

Affidavit of Special Agent Schmidt
in Support of Search Warrant                    13

EXHIBIT  A   PAGE 13 of 20