DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:05-cr-0076-04-RRB-JDR |
| Plaintiff, | ) |
| vs. | ) |
| RODERICK O. WILLIAMS, | ) OPPOSITION TO MOTION |
|  | ) TO SUPPRESS EVIDENCE |
| Defendant. | ) |

COMES NOW the United States of America, by and through undersigned counsel, and hereby opposes defendant's motion to suppress evidence, filed at docket 234, with an accompanying memorandum of law submitted at docket 235.

Therein, the defendant moves to suppress all evidence obtained from a search of the defendant's residence located at 1303 W. 23rd Ave., #23, obtained after his arrest on December 15, 2006, pursuant to a search warrant. The search warrant was fully supported by probable cause supplied by the affidavit of Special Agent Mark Schmidt. Thus, the defendant's motion should be denied.

## BACKGROUND

On December 14, 2006, an arrest warrant was issued for the defendant based on his indictment for Drug Conspiracy, in violation of 21 U.S.C. § 846. See Exhibit A to defendant's motion to suppress, Affidavit of Special Agent Mark Schmidt in Support of Search Warrant (hereinafter the "Schmidt Aff."), ¶8. In preparation for the execution of that arrest warrant, Agent Schmidt made efforts to determine the defendant's residence. Schmidt Aff., ¶ 9. Agent Schmidt learned that the defendant's girlfriend, Paula Roberds, lived at 1303 W. 23rd Ave., #28 (hereinafter the "target location"). Based on previous surveillance, Agent Schmidt knew that a vehicle belonging to the defendant was parked in front of the target location. Schmidt Aff., ¶ 9.

That evening, Agent Schmidt established surveillance outside the target location, and saw a black Lincoln Navigator outside the location. Schmidt Aff., ¶ 10. A cooperating defendant had told Agent Schmidt that the defendant drove a

Lincoln Navigator.  Schmidt Aff., ¶ 10.  Agent Schmidt left the target location and returned the next morning, December 15, 2006.  Schmidt Aff., ¶ 11.  When he returned, he observed the same Lincoln Navigator parked in the same spot as the previous evening.  Schmidt Aff., ¶ 11.

At approximately 1:50 pm, Agent Schmidt observed the Lincoln Navigator depart the area of the target location.  Schmidt Aff., ¶ 12.  Agent Schmidt determined that the defendant was in the vehicle, which was being driven by his girlfriend, Paula Roberds.  Schmidt Aff., ¶ 12.  Agent Schmidt watched as the defendant exited the vehicle near W. 23rd and Cope St., approach the driver's side window of a pickup truck that had turned onto Cope St. as the defendant exited his vehicle.  Roberds turned around and picked up the defendant, while the pickup truck sped off.  In Agent Schmidt's training and experience, he believed that the defendant had just engaged in a drug transaction with the driver of the pickup truck.  Schmidt Aff., ¶ 12.

The defendant and Roberds then drove by and looked at Agent Schmidt's vehicle.  Schmidt Aff., ¶ 13.  Agent Schmidt then stopped the defendant's vehicle and ordered the defendant and Roberds out of the vehicle.   Schmidt Aff., ¶ 14.  Both the defendant and Roberds, who had an outstanding state warrant, were taken

into custody.[1]  A three year old girl was in the back of the defendant's vehicle, who was taken out and given to her mother.  While doing so, Agent Schmidt smelled marijuana burning in the vehicle.   Schmidt Aff., ¶ 14.  Special Agent Ken Solek took custody of the vehicle to move it out of traffic and back to the DEA building.  Before doing so, Agent Solek observed a large sum of cash in an open purse; Agent Solek also smelled burning marijuana.  Schmidt Aff., ¶ 15.

The vehicle, which appeared to be just used in a drug transaction, was taken back to the DEA for the processing of evidence and for later administrative forfeiture. A search of the vehicle yielded approximately $3,000, a set of digital scales with cocaine residue, a marijuana cigarette, and documents belonging to both Roberds and the defendant, including a speeding ticket in the defendant's name and a license in Roberds name that listed her address as the target location. Schmidt Aff., ¶ 16.  A canine trained in the detection of odors of controlled substances alerted to both the vehicle and the money inside the vehicle; a field test confirmed the presence of cocaine on the digital scales.  Schmidt Aff., ¶ 17.

At this point, Agent Schmidt had the following information: (1) the defendant had been indicted for drug conspiracy; (2) the defendant and Roberds

---

[1] Agents learned that Roberds outstanding warrant was for a minor violation, and that she would likely be released from custody that very day.

appeared to have just engaged in a drug transaction on December 15, 2006, as confirmed by Agent Schmidt's observations, the drug evidence found in the vehicle, and the canine alert on the money found in the vehicle; (3) the defendant and Roberds appeared to come from the target location prior to the drug deal; (4) the defendant and Roberds appeared to live in the target location.  Based on these facts, Agent Schmidt decided to apply for a search warrant for the target location.  At approximately 6:00 pm on December 15, 2006, agents were sent to the location to secure the residence.  Schmidt Aff., ¶ 18.  When they arrived, Paula Roberds, who had already been released on the state warrant, was inside the apartment; Agent Solek also smelled the odor of burning marijuana.  In plain view while securing the residence, Agent Solek observed a pipe with marijuana residue on a bookshelf and a piece of packaging material consistent with drug distribution in the bathroom.  Schmidt Aff., ¶ 18.

Approximately two hours after agents secured the target location, Agent Schmidt applied for and was granted a search warrant for the target location. Agents recovered drug paraphernalia, cocaine residue, and paperwork linking the defendant to the apartment.

## PROCEDURAL AND LEGAL ISSUES PRESENTED

The sole issue raised by the defendant's motion is whether or not Agent

Solek and other agents were permitted to enter the target location to secure it pending application for the search warrant. See Defendant's Memorandum of Law, p. 8. Defendant characterizes such entry and observation of plain view contraband as an illegal search, which yielded evidence that was included in Special Agent Schmidt's affidavit in support of the search warrant. The defendant then reasons that the observation of the plain view contraband led to the authorization of the search warrant, which resulted in the seizure of evidence that is "the fruit of the poisonous tree." In order to reach this argument, the defendant states that "[i]t is believed that it will not be disputed that defendant, Roderick Williams, has standing to bring this motion."

The defendant has it backwards. He has the burden of demonstrating that he has a reasonable expectation of privacy in the place searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). The defendant is not "entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) (citing United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993)). While the government believes that the defendant maintains a residence at the target location, the defendant has not satisfied his burden in this regard, and the Court should not entertain the motion absent proof of standing.

Assuming the defendant meets his procedural burden, the entry into the target location to briefly secure it pending authorization of the search warrant was permissible under the Fourth Amendment.  Even assuming, for the sake of argument, that such entry was not justified, there was ample probable cause for issuing the warrant absent Agent Solek's plain view sightings of contraband.

I.  **THE SECURING OF THE TARGET LOCATION WAS PROPER, NECESSARY, AND JUSTIFIED UNDER THE FOURTH AMENDMENT.**

The police may, in certain, limited circumstances, briefly secure a person's residence for the purpose of obtaining a search warrant for the residence.  In Illinois v. McArthur, 531 U.S. 326 (2001), police officers, with probable cause to believe that a defendant had hidden marijuana in his home, prevented him from entering his home unaccompanied by an officer for about two hours while they obtained a search warrant. The Supreme Court determined that, given the nature of the intrusion and the law enforcement interest at stake, this brief seizure of the premises was permissible under the Fourth Amendment. The Court articulated four factors leading to the conclusion  the police acted reasonably: (1) there was probable cause to believe narcotics were located in the defendant's residence; (2) there was a legitimate fear that the defendant would destroy the evidence if the police did not secure the residence; (3) the police did not arrest the defendant or

conduct any search of his residence prior to obtaining a warrant; and (4) the residence was secured for only two hours. 531 U.S. at 332-33.

Indeed, the Ninth Circuit has held that, "[u]nder the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist." United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005) citing United States v. Lai, 944 F2d 1434, 1441 (9th Cir. 1991) (abrogated on other grounds). In Lai, the Ninth Circuit approved of a warrantless entry of a residence in a case factually analogous to the one at bar. There, officers entered a defendant's house to secure it pending application for a search warrant because officers feared that evidence would be destroyed. While securing the residence, the officers found weapons in plain view, which they seized. The Ninth Circuit found that the initial seizure of the house was supported by exigent circumstances, because a warrant could not have been obtained with sufficient speed. Id. at 1442 n. 2.

Similarly, and after application of the factors set forth in Illinois v. McArthur, supra, the seizure of the defendant's residence was justified in the case at bar. First, as the Schmidt Affidavit makes clear, there was probable cause to believe evidence of a narcotics crime was located in the target location. See infra.

Next, there was a legitimate fear that evidence would be destroyed if agents did not secure the residence. The agents knew that Paula Roberds, the defendant's girlfriend would likely get out of jail that day and likely attempt to destroy evidence. Nevertheless, the agents did not arrest Roberds or conduct a search of the residence. They simply secured it by doing a protective sweep of the premises to ensure their safety. Maryland v. Buie, 494 U.S. 325 (1990); United States v. Hoyos, 892 F.2d 1387, 1401 (9th Cir. 198) ( Beezer, J., concurring in part and dissenting in part) ("Police making an arrest inside a house are likely to face grave, immediate danger from others within."), overruled on other grounds, United States v. Ruiz, 257 F.3d 1030 (9th Cir. 2001). While securing the residence, Agent Solek detected the plain smell of marijuana, and saw other paraphernalia in plain view. Agent Solek did not seize such property, even though such seizure would have been proper. See Coolidge v. New Hampshire, 403 U.S. 443 (1971). Instead, he awaited the search warrant which arrived approximately two hours later. Given these circumstances, the agents entry into the target location was necessary, justified, and proper.

## II. THERE WAS PROBABLE CAUSE TO SEARCH THE TARGET LOCATION WITHOUT REFERENCE TO THE PLAIN VIEW EVIDENCE OBSERVED BY AGENT SOLEK.

Even if Agent Solek's plain view observations are excised from the Schmidt Affidavit, it is clear that the search warrant for the target location is supported by abundant probable cause. When viewed under the totality of the circumstances, there was probable cause to search the target location. Illinois v. Gates, 462 U.S. 213, 239 (1983). To satisfy the standard set forth in Gates, the Ninth Circuit has stated:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985) (emphasis in original, citations omitted), overruled on other grounds sub. nom, Gomez v. United States, 490 U.S. 858 (1989). A magistrate may draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense alleged. See, e.g., United States v. Garza, 980 F.2d 546, 551 (9th Cir. 1992); United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990) (citing United States, Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)). In Terry, the Ninth Circuit noted that "a magistrate may rely on the conclusions of experienced law

enforcement officers regarding where evidence of a crime is likely to be found," (911 F.2d at 275), and concluded that the requesting agent's statement that he knew from "past experience that methamphetamine drug traffickers keep drugs, paraphernalia, records, and money in their homes or adjoining structures," combined with personal knowledge of the defendant's earlier possession of methamphetamine, was sufficient to establish probable cause for a warrant to search the residence.  Id. at 275-76.  See also United States v. Gil, 58 F.3d 1414, 1419 (9th Cir. 1995) (concluding that affidavit in which "surveillance observations ... provided a sufficient basis for the judge to infer that the defendants lived at the residences ... and that they were involved in the drug trade" established probable cause).

In summary, the extensive experience of Special Agent Schmidt in drug investigations, together with his observations of suspected drug activity involving the defendant that very day, sustain a finding of probable cause.  Indeed, in paragraph 6 of his affidavit, Agent Schmidt sets forth his experience in investigating drug traffickers, as well as the different records drug traffickers keep in the places they reside.  Agent Schmidt, as well as the Magistrate Judge, had probable cause to believe the defendant was involved in drug trafficking because a grand jury found that there was probable cause to indict the defendant for drug

conspiracy. Schmidt Aff., ¶ 8. Moreover, Agent Schmidt has probable cause to believe that he defendant lived at the target location based on prior surveillance, cooperating defendant information, and recent observation. That very day, Agent Schmidt saw the defendant drive from the target location with Roberds and engage in what he believed, in his training and experience, was a drug transaction. A search of the defendant's vehicle confirmed the defendant and Roberds nexus to drug trafficking, as a canine alerted to cash and the contents of the vehicle. Thus, based on the totality of circumstances, it was reasonable for the Magistrate Judge to conclude that evidence of a drug trafficking crime would be found in the target location.

Accordingly, even if the Court were to find that Agent Solek's observations of contraband in plain view were not supported by exigency, the items would be admissible because they would have been inevitably uncovered during the execution of the search warrant. See Segura v. United States, 468 U.S. 796, 813-14 (1984) (under the independent source doctrine, evidence discovered during a subsequent search pursuant to a valid warrant based upon an independent source does not have to be suppressed as "fruit" of an earlier illegal entry).

Finally, it cannot be said that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

United States v. Leon, 468 U.S. 897, 923 (1984). Nor is there any claim that the Magistrate Judge wholly abandoned his judicial role in issuing the warrant. Therefore, even assuming the warrant was not supported by probable cause, the evidence found in search warrant would be admissible under the good faith exception to the exclusionary rule. Leon, 468 U.S. at 926 (1984).

## CONCLUSION

For all the above reasons, the United States respectfully submits that the defendant's motion to suppress evidence should be denied. The entry into the target location was reasonable in light of the agents fear that Roberds would destroy evidence. Once inside, the agents were permitted to perform a protective sweep for their safety, and could view evidence in plain view. Even if such observations were excised from the warrant, the warrant is still supported by

//


//

abundant probable cause supplied by Agent Schmidt's experience and observations. Finally, the agents were entitled to rely upon the Magistrate Judge's (correct) finding of probable cause.

  RESPECTFULLY SUBMITTED this __10th__ day of April, 2006 in Anchorage, Alaska.

         DEBORAH M. SMITH
         Acting United States Attorney

         s/ Frank V. Russo
         Assistant U.S. Attorney
         Federal Building & U.S. Courthouse
         222 West Seventh Avenue, #9, Room 253
         Anchorage, Alaska  99513-7567
         (907) 271-5071
         (907) 271-1500 (fax)
         Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2006,
a copy of the foregoing was served
electronically on Lance C. Wells, Esq.

s/ Frank V. Russo