DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:05-0076-04-RRB-JDR |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | OPPOSITION TO SECOND |
| RODERICK O. WILLIAMS, ) | MOTION TO SUPPRESS |
| ) | PHYSICAL EVIDENCE |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

COMES NOW the United States of America, by and through undersigned

counsel, and hereby opposes defendant's motion to suppress evidence, filed at

docket 254, with an accompanying memorandum of law and affidavit submitted at docket 255.  Therein, the defendant requests a <u>Franks</u> hearing, alleging that Special Agent Schmidt committed perjury in his affidavit in support of a search warrant for the defendant's residence located at 1303 W. 23rd Ave., #23.   The defendant has not made a substantial showing that there are material misstatements in the affidavit, or that the warrant fails without such misstatements.  Thus, the defendant's motion should be denied.

### <u>BACKGROUND</u>

On December 14, 2006, an arrest warrant was issued for the defendant based on his indictment for Drug Conspiracy, in violation of 21 U.S.C. § 846.  <u>See</u> Exhibit A to defendant's motion to suppress, Affidavit of Special Agent Mark Schmidt in Support of Search Warrant (hereinafter the "Schmidt Aff."), ¶8.  In preparation for the execution of that arrest warrant, Agent Schmidt made efforts to determine the defendant's residence.  Schmidt Aff., ¶ 9.  Agent Schmidt learned that the defendant's girlfriend, Paula Roberds, lived at 1303 W. 23rd Ave., #28 (hereinafter the "target location").  Based on previous surveillance, Agent Schmidt knew that a vehicle belonging to the defendant was parked in front of the target location.  Schmidt Aff., ¶ 9.

That evening, Agent Schmidt established surveillance outside the target

location, and saw a black Lincoln Navigator outside the location.  Schmidt Aff., ¶ 10.  A cooperating defendant had told Agent Schmidt that the defendant drove a Lincoln Navigator.  Schmidt Aff., ¶ 10.  Agent Schmidt left the target location and returned the next morning, December 15, 2006.  Schmidt Aff., ¶ 11.  When he returned, he observed the same Lincoln Navigator parked in the same spot as the previous evening.  Schmidt Aff., ¶ 11.

At approximately 1:50 pm, Agent Schmidt observed the Lincoln Navigator depart the area of the target location.  Schmidt Aff., ¶ 12.  Agent Schmidt determined that the defendant was in the vehicle, which was being driven by his girlfriend, Paula Roberds.  Schmidt Aff., ¶ 12.  Agent Schmidt watched as the defendant exited the vehicle near W. 23rd and Cope St., approach the driver's side window of a pickup truck that had turned onto Cope St. as the defendant exited his vehicle.  Roberds turned around and picked up the defendant, while the pickup truck sped off.  In Agent Schmidt's training and experience, he believed that the defendant had just engaged in a drug transaction with the driver of the pickup truck.  Schmidt Aff., ¶ 12.

The defendant and Roberds then drove by and looked at Agent Schmidt's vehicle.  Schmidt Aff., ¶ 13.  Agent Schmidt then stopped the defendant's vehicle and ordered the defendant and Roberds out of the vehicle.    Schmidt Aff., ¶ 14.

Both the defendant and Roberds, who had an outstanding state warrant, were taken into custody.[1]  A three year old girl was in the back of the defendant's vehicle, who was taken out and given to her mother.  While doing so, Agent Schmidt smelled marijuana burning in the vehicle.    Schmidt Aff., ¶ 14.  Special Agent Ken Solek took custody of the vehicle to move it out of traffic and back to the DEA building.  Before doing so, Agent Solek observed a large sum of cash in an open purse; Agent Solek also smelled burning marijuana.  Schmidt Aff., ¶ 15.

The vehicle, which appeared to be just used in a drug transaction, was taken back to the DEA for the processing of evidence and for later administrative forfeiture. A search of the vehicle yielded approximately $3,000, a set of digital scales with cocaine residue, a marijuana cigarette, and documents belonging to both Roberds and the defendant, including a speeding ticket in the defendant's name and a license in Roberds name that listed her address as the target location. Schmidt Aff., ¶ 16.  A canine trained in the detection of odors of controlled substances alerted to both the vehicle and the money inside the vehicle; a field test confirmed the presence of cocaine on the digital scales.  Schmidt Aff., ¶ 17.

At this point, Agent Schmidt had the following information: (1) the

---

[1]     Agents learned that Roberds outstanding warrant was for a minor violation, and that she would likely be released from custody that very day.

defendant had been indicted for drug conspiracy; (2) the defendant and Roberds

appeared to have just engaged in a drug transaction on December 15, 2006, as

confirmed by Agent Schmidt's observations, the drug evidence found in the

vehicle, and the canine alert on the money found in the vehicle; (3) the defendant

and Roberds appeared to come from the target location prior to the drug deal; (4)

the defendant and Roberds appeared to live in the target location.  Based on these

facts, Agent Schmidt decided to apply for a search warrant for the target location.

At approximately 6:00 pm on December 15, 2006, agents were sent to the location

to secure the residence.  Schmidt Aff., ¶ 18.  When they arrived, Paula Roberds,

who had already been released on the state warrant, was inside the apartment;

Agent Solek also smelled the odor of burning marijuana.  In plain view while

securing the residence, Agent Solek observed a pipe with marijuana residue on a

bookshelf and a piece of packaging material consistent with drug distribution in the

bathroom.  Schmidt Aff., ¶ 18.

     Approximately two hours after agents secured the target location, Agent

Schmidt applied for and was granted a search warrant for the target location.

Agents recovered drug paraphernalia, cocaine residue, and paperwork linking the

defendant to the apartment.

## I.    A *FRANKS* HEARING IS UNNECESSARY

The search warrant for the defendant's residence was based on five grounds: (1) the defendant had been indicted for drug conspiracy; (2) the defendant and Roberds appeared to have just engaged in a drug transaction on December 15, 2006, as confirmed by Agent Schmidt's observations, the drug evidence found in the vehicle, and the canine alert on the money found in the vehicle; (3) the defendant and Roberds appeared to come from the target location prior to the drug deal; (4) the defendant and Roberds appeared to live in the target location; (5) Agent Solek observed drug paraphernalia in plain view when he secured the residence .  The defendant now attempts to assail one of those grounds by claiming that Special Agent Schmidt lied with respect to observing what appeared, based on his training and experience, to be a drug transaction.

A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.  United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000).  The defendant can show neither.

A.    The Defendant Cannot Make a Substantial Preliminary Showing that Agent Schmidt made Intentionally False Statements.

In support of his claim that Agent Schmidt lied in two paragraphs of his 18 paragraph affidavit, the defendant has submitted an affidavit claiming that Agent Schmidt's allegations in those two paragraphs are untrue.  The defendant also claims that he will testify at an evidentiary hearing that such facts are untrue. Putting aside for the moment that the defendant has been convicted of multiple felonies and has lied about his name in the past, it is difficult to imagine how the defendant can prove that Agent Schmidt's perceptions are intentionally false.  In paragraph 12 of the Schmidt Affidavit, Agent Schmidt simply states "it appeared to me that WILLIAMS had conducted some type of illicit drug transaction."  Agent Schmidt never states that he observed an actual hand to hand drug transaction (which would have made a better observation in support of probable cause if one wanted to lie in order to sustain such a finding.)  Therefore, it is impossible for the defendant to take issue with Agent Schmidt's beliefs, which were soundly based on prior training and experience.

B.    The Affidavit Supports a Finding of Probable Cause Even Without Agent Schmidt's Observations.

Agent Schmidt's observations of what appeared to him to be a drug transaction – accurate though they may be – are not essential to a finding of

probable cause to search the defendant's residence.  Thus, the defendant fails the second prong of the <u>Franks</u> analysis.  Without Agent Schmidt's observations, there is still the fact that the defendant had been indicted for drug conspiracy.  As such, this alone justifies a search of the defendant's residence.  <u>United States v. Terry</u>, 911 F.2d 272, 275-76 (9th Cir. 1990) (evidence of drug trafficking likely to be found in defendant's residence; <u>see also United States v. Gil</u>, 58 F.3d 1414, 1419 (9th Cir. 1995) (concluding that affidavit in which "surveillance observations ... provided a sufficient basis for the judge to infer that the defendants lived at the residences ... and that they were involved in the drug trade" established probable cause).

However, investigators also found a scale with cocaine residue in the defendant's vehicle, along with money.  A drug detection canine alerted to both the vehicle and the money.  Field tests conducted on the scale confirmed that it contained cocaine residue.  Moreover, Agent Solek's observations of drug paraphernalia in plain view buttress the Magistrate Judge's finding of probable cause.   In sum, the affidavit is supported by abundant probable cause, irrespective of Agent Schmidt's (accurate) observations.

## CONCLUSION

For all the above reasons, the United States respectfully submits that the defendant's motion to suppress evidence should be denied.    A Franks hearing is unnecessary, as the defendant has not – and cannot – meet his burden of making a substantial preliminary showing that the affidavit contains intentionally or recklessly false statements or misleading omissions, or that such facts are necessary to a probable cause determination.

RESPECTFULLY SUBMITTED this  27th day of April, 2006 in Anchorage, Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
> s/ Frank V. Russo
> Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 222 West Seventh Avenue, #9, Room 253
> Anchorage, Alaska  99513-7567
> (907) 271-5071
> (907) 271-1500 (fax)
> Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following counsel of record on April 10, 2006, via:

        (X) Electronic case filing notice

Lance C. Wells, Esq.

Executed at Anchorage, Alaska, on April 26, 2006

s/ Frank V. Russo
Office of the U.S. Attorney

U.S. v. Williams
Case No. 3:05-0076-04-RRB-JDR        Page 9 of  9