UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br>vs.<br><br>(01) BYRON WILLIAMS,<br>(02) LATONYA STUCKEY,<br>(03) KELVIN WASHINGTON,<br>**(04) RODERICK ONDRA WILLIAMS**,<br>(05) MARIE INEZ HASAN-LOMAX,<br>(06) TANYA E. CHAISON and<br>**(07) PAULA MARIE ROBARDS**,<br>(08) SHIRLEE ANN KAKARUK,<br><br>    Defendant. | 3:05-cr-00076 (RRB) (JDR)<br><br>**RECOMMENDATION<br>REGARDING<br>MOTIONS TO SUPPRESS**<br><br>(Docket Entries 234, 254 & 256) |

   Defendant Roderick Williams moves to suppress evidence derived from the search of a residence at 1303 West 23rd Avenue, Apartment 28, on December 15, 2005. Docket entry 234. Co-defendant Paula Roberds joins the motion at Docket entry 256. Williams filed a second motion to suppress evidence, Docket entry 254. The government filed oppositions to both motions to suppress,

Docket entries 241 & 260, respectively, and an opposition to Roberds' joinder, Docket entry 262. The second motion to suppress alleges that paragraphs 12 and 13 of the affidavit of special agent Mark Schmidt, Drug Enforcement Agency (DEA), to obtain search warrant A05-244 MJ contains false material statements which if stricken would leave insufficient probable cause in the application to support issuance of the warrant. Williams requested a Franks hearing to address his allegations.[1]

An evidentiary hearing was conducted on both suppression motions on May 4, 2006. Testimony was adduced from special agents Mark Schmidt and Kenneth Solek, Roderick Williams, and Paula Roberds. Upon due consideration of the evidence adduced and arguments of counsel, the magistrate judge recommends that the court adopt findings of fact and conclusions of law as set forth below, and that the motions to suppress be denied without a separate Franks hearing.

## Findings of Fact

On December 14, 2005, a felony arrest warrant was issued for Roderick Williams based on an indictment for drug conspiracy in violation of 21 U.S.C. § 846. Agent Mark Schmidt conducted an investigation to locate Williams in order to execute the arrest warrant. The agent sought to determine Williams' residence. He learned that Williams' girlfriend, Paula Roberds (a co-defendant herein) lived at 1303

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

West 23rd Avenue, Apartment 28.  Surveillance of the residence was undertaken, and a black Lincoln Navigator was observed parked near the residence.  Agent Schmidt obtained information from a confidential informant that Williams had occasionally driven the Lincoln.  Agent Schmidt learned from Department of Motor Vehicle records that Paula Roberds lived in No. 28 at 1303 West 23rd, Romig Court Apartments.

On December 15, 2005, Agent Schmidt observed the Lincoln Navigator parked in the same spot as the previous evening.  Agent Schmidt positioned himself in an unmarked vehicle in front of the Bread Company on Spenard Road so that he could observe if the Lincoln was moved.  Agent Schmidt testified that there was a structure impeding his direct view of the entrance to the apartment complex.  Therefore, he could not see people going to or leaving the apartment.  However, he did see Roberds enter the Lincoln.  The agent did not see Williams enter the Lincoln.  About 1:50 p.m. he observed the Lincoln depart and followed it.  He noticed that Roberds was driving.  Subsequently, he saw Williams exit the vehicle near the corner of West 23rd and Cope.  The Lincoln continued west.  Agent Schmidt observed Williams go to the driver's side window of a blue and white pickup and place his hands inside the vehicle.  It appeared to agent Schmidt that Williams might be conducting some business transaction with the driver.

Agent Schmidt observed the Lincoln still driven by Roberds turn around and pick up Williams. The blue and white pickup took off on 23rd in the opposite direction from Agent Schmidt at a high rate of speed. The agent saw Williams jump into the back seat of the Lincoln, which then proceeded toward agent Schmidt.

Agent Schmidt flipped his jacket on the seat so that it displayed his police identification as the Lincoln proceeded past him. He turned on his flashing lights and siren and followed the vehicle which then stopped. Although the Lincoln had tinted windows, the rear window was clear so the agent could observe both Williams and Roberds in the Lincoln as he followed it. He ordered the occupants to show him their hands and get out of the vehicle. Agent Schmidt was alone and pointed his weapon at the vehicle as he approached.

After a delay Williams got out of the back seat and got on the ground at the agent's request. About this time, backup officers arrived. Roberds got out of the vehicle. When officers moved toward the Lincoln, they saw an infant on the back seat. Roberds asked the officers to call an individual who could come and take the baby.

Agent Schmidt smelled marijuana smoke near the Lincoln when he approached to see if there were any other occupants. Williams was patted down and taken to the Anchorage district DEA office. Roberds had an outstanding misdemeanor warrant, and she was taken to jail for processing.

Kenneth Solek, Jr., special agent DEA, was the acting group supervisor on December 15, 2005. He was called to assist agent Schmidt. Agent Solek proceeded to the intersection of Fireweed and Spenard where Schmidt had stopped the Lincoln. When Williams and Roberds exited the Lincoln, the vehicle was in the street where it would impede traffic. Agent Solek moved the Lincoln to a parking lot twenty yards away. When he did so, he smelled marijuana in the back of the vehicle and observed in plain view a burnt marijuana joint on the floor. He observed an open purse with protruding bundles of U.S. currency on the front passenger side. The purse held $3,100 consisting of bills in denominations of $5 to $100. He also observed a small set of scales containing residue located in the console of the vehicle. He knew Agent Schmidt had relayed over his radio that he thought Williams was completing a drug transaction. An officer field tested the residue on the scale which proved positive for cocaine. A drug detection dog was brought to the scene and alerted on the vehicle. The money was removed from the vehicle, and the dog also alerted to the money.

One of the backup officers told agent Schmidt that Roberds would likely be released soon. This caused agent Schmidt concern about securing Apartment 28 against the destruction of evidence while he sought a search warrant for the residence. Agent Schmidt left the scene about 2:30 p.m. He went to the DEA office and processed Williams which took about 30-40 minutes. He asked assisting

officers to secure the apartment while he sought a search warrant. The officers arrived at the apartment about 6:00 p.m. Agent Schmidt applied for and received a search warrant at 8:38 p.m.

About 6 p.m. agent Solek received information that Roberds had been released from jail and had called inquiring about the Lincoln. He knew from his experience that people are likely to return to a residence after being released by the court and destroy evidence.

Agent Solek proceeded to Apartment 28. From his observations out doors, he could not tell if there was anyone there. He knocked on the door, and it was answered by Roberds. He identified himself and told her that the officers were applying for a search warrant and needed to check to see if any other person was present. Roberds moved aside.

An agent stood with Roberds as several agents assisted agent Solek into the apartment to conduct a protective sweep. No one else was found in the apartment. Agent Solek observed a marijuana pipe on a shelf as he proceeded up the stairwell. When he looked in the bathroom he observed a cut baggie in a trash can. He did not touch it or move anything in the bathroom. There was not much trash in the receptacle and he could see through the baggie to the bottom and observe that there was no weapon hidden there. He noticed a distinct smell of burning marijuana within the apartment.

Agent Solek told Roberds she was free to leave, but she did not do so, nor did she ask for the officers to leave. Roberds sat on a couch watching television while the officers waited for the response from agent Schmidt about a search warrant.

While securing the premises, agent Solek talked to agent Schmidt and told him what he had seen in the apartment. Agent Schmidt added this information to his application for a search warrant.

At the evidentiary hearing Roderick Williams testified that he left the apartment on December 15, 2005, about 1:00 p.m. prior to Roberds leaving. He explained that because he was not supposed to be out of the presence of his third-party custodian who was not Paula Roberds, he left from a different entrance than Roberds. He testified that he started walking and when Roberds pulled to the side, he walked by because he was suspicious of vehicles behind her. Williams claims that when Roberds circled back and came by the second time, he jumped into the back seat of the vehicle.

Williams' testimony is in direct conflict with that of agent Schmidt. He claims that he did not get out of the Lincoln and go to a blue and white pickup or walk up to any other vehicle as agent Schmidt described. Williams is not a credible witness. He admits that he previously lied to police about his name when he knew that there was a warrant out for his arrest. He stated he was looking at a lot of time

and did not want to be apprehended.  In the instant case, Williams acknowledges that he is also facing a lot of prison time if convicted and he has reason to fabricate his story.  Williams made contradictory statements.  For example, he claimed that the marijuana joint in the vehicle could have been planted by the officers.  Later in his testimony, he said that he had smoked marijuana and put the cigarette butt in the Lincoln.

Roberds testified that her purse was closed and setting on the passenger floorboard.  That statement is in direct conflict with agent Sokel's testimony that the purse was open and there was a large amount of bundled cash sticking out of the purse.  I find agent Sokel's statement that the purse was opened credible and reject Roberds' testimony that the purse was closed. Williams testified that he did not see the purse when he got into the vehicle, and he was not asked whether it was open or closed.

Roberds claims she did not open the door for the agents who came to her apartment after she had been released from custody on December 15.  I accept agent Sokel's testimony to the contrary that she did open the door in response to their knocking.  Roberds testified that she thought the officers looked around her apartment while she was there.  I find that other than the protective sweep, the officers did not conduct any search of the apartment.  Upon executing the search warrant agents found additional evidence the government intends to offer at trial.

## Discussion

### A. Standing

As a threshold issue, the government challenged the standing of the defendants to contest the initial entry into the apartment. A defendant bears the burden of demonstrating that he has a reasonable expectation of privacy in the place searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). At the evidentiary hearing, the defendants produced a residential rental agreement signed by Williams and Roberds for Apartment 28. Defendants' Exhibit A. Based on the defendants' testimony and the lease agreement, I conclude the defendants have standing to bring their motion to suppress.

### B. Claim of Warrantless Search

The first motion to suppress presents the sole issue of whether the agents violated the Fourth Amendment by searching defendants' residence prior to the issuance of a valid search warrant. Williams and Roberds contend that the officers conducted a warrantless search of the residence prior to the issuance of search warrant no. A05-244 MJ. I conclude that the agents lawfully secured the residence located at 1303 West 23rd Avenue, Apartment 28 pending application for a federal search warrant to search that location. The government further argues that even if the initial entry was illegal, it is irrelevant to the challenge of the evidence

obtained under the search warrant because there was an independent source for the warrant.

The parties dispute whether the officers had authority to secure Apartment 28 pending the application for a search warrant. Williams cites <u>Segura v. United States</u>, 468 U.S. 796 (1984). There, the agents had secured premises to prevent destruction of evidence awaiting a search warrant that was not issued until some nineteen hours after the initial entry into the apartment. The district court found that the initial warrantless entry and the limited security search were not justified by exigent circumstances and were therefore illegal. The Second Circuit Court of Appeals agreed, and the Supreme Court noted that no review of that aspect of the case was sought by the government, and no issue concerning items observed during the initial entry was before the Court. 468 U.S. at 804.

The government cites <u>Illinois v, McArthur</u>, 531 U.S. 326 (2001). In <u>McArthur</u> police with probable cause to believe that McArthur had hidden marijuana in his home, prevented him from entering the residence unaccompanied by an officer for about two hours while they sought a search warrant. The Supreme Court held that the brief seizure of the premises was permissible under the Fourth Amendment. The Court declined to establish a *per se* rule of unreasonableness and held that the trial court must balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable. In assessing the facts in that case, the

Court observed that the police had probable cause to believe that McArthur's home contained evidence of a crime and unlawful drugs. Second, they had good reason to fear that unless McArthur was restrained, he would destroy the drugs before they could return with a warrant. Third, the officers made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy by avoiding a warrantless entry or arrest and preventing McArthur only from entering his home unaccompanied. Fourth, the restraint was imposed only for a limited time which was no longer than reasonably necessary for the officers acting with diligence to obtain the warrant. The court observed that it had not previously held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable time period. The police had encountered McArthur on his porch and ordered that he stay outside his home but allowed him to re-enter if accompanied by an officer.

Applying those factors to the instant case, the DEA agents had probable cause to believe that Apartment 28 contained evidence of a drug crime and contraband. The agents believed that Roberds resided in that residence and was frequently visited by Williams. Roberds had been observed driving from the apartment area. Agent Schmidt had observed Williams conduct what appeared to be a drug transaction prior to getting into the back seat of the vehicle. The vehicle smelled like marijuana, contained a large amount of currency and a set of scales

suitable for weighing cocaine.  Williams had an outstanding arrest warrant for a federal drug crime.  Roberds was present when Williams was arrested that day and she had just returned to the apartment.  The agents had good reason to believe that unless restrained, Roberds would destroy any drugs or related evidence before they could return with a warrant.

The agents made reasonable efforts to reconcile their law enforcement needs with the demands of Roberds' personal privacy.  It was the middle of December in Alaska and cold outside.  The agents promptly conducted a protective sweep to see if anyone else was present in the apartment.  An important distinguishing factor in the instant case is that the officers' interest in searching the apartment was no longer a surprise to Roberds because of her prior encounter with the law enforcement officers that day.  The government had an urgent law enforcement need to protect themselves while they prevented Roberds from destroying evidence prior to issuance of the search warrant.  The agents had probable cause to arrest Roberds based on the observation of agent Schmidt who saw Roberds participate in the alleged drug transaction. She picked up Williams and possessed a wad of cash which was found in her purse when the vehicle was stopped.  The agents conducted a protective sweep because of their need to preserve the status quo.  <u>McArthur</u> recognizes that the exigencies of the circumstances may permit a temporary seizure without a warrant.  I reject the

defendant's claim that the agents searched the apartment beyond a limited protective sweep for persons before obtaining a warrant.

Law officers are entitled to make plain-view observations while conducting a sweep of areas where a person might reasonably be expected to hide. I am satisfied from the evidence that agent Solek did not search the trash can in the bathroom beyond looking in it as he entered the room to search for other persons. Similarly, his observation of the marijuana apparatus while ascending the stairwell was done in plain view.

The restraint imposed upon Roberds was for a limited period of time, approximately several hours. Agent Schmidt needed to process Williams who had been arrested on an arrest warrant before he could prepare his affidavit and locate a judicial officer after hours to apply for a search warrant.

The Ninth Circuit defines "exigent circumstances" as an exception to the warrant requirement for a search or seizure of a home as "those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005), citing, United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc), cert. denied, 469 U.S. 824 (1984). The Martinez court explained

that the exigency doctrine provides justification for a warrantless entry. The exception allows officers when reasonably concerned for the public safety to engage in limited entry to prevent physical harm to the officers or the destruction of relevant evidence. Agent Schmidt acted promptly in seeking a search warrant soon after the probable cause for searching the residence arose. I conclude that the defendants' challenge to the admission of evidence found in the search of Apartment 28 pursuant to a search warrant on the ground that the search warrant was issued on the basis of information obtained during an alleged illegal entry into the residence lacks merit. *See also*, United States v. Lai, 944 F.2d 1434, 1442-43 (9th Cir. 1991) (abrogated on other grounds) discussing exigent circumstances where the police knew that at least one person was in the residence.

### C. The Search Warrant

Williams contends that paragraphs 12 and 13 of the search warrant application contain materially false statements by Agent Schmidt. I disagree. Paragraph 12 of the warrant application does not describe any observation of Williams entering the Lincoln Navigator on December 15. It states that agent Schmidt observed the Lincoln Navigator depart the area. It states that he followed the vehicle and observed Williams exit the vehicle at the corner of West 23rd Avenue and Cope Street. After describing the observation of Williams walking to the driver's side of a blue and white pickup truck that had turned onto Cope Street just as

Williams exited the Navigator, the affidavit states that agent Schmidt drove past the Lincoln and observed the Lincoln go around the block and then return to the corner of West 23rd Avenue and Cope Street and pick up Williams.

Williams argues that these statements of paragraph 12 are false statements, and that they are material to the warrant application. Assuming arguendo that Williams truthfully describes his departure from the apartment, this does not render any of the statements in paragraph 12 untrue. Aside from exactly when and where Williams got into the Lincoln (facts which are not described in the warrant application), the defendants have not shown that agent Schmidt's statements in paragraphs 12 or 13 are incorrect or false. I accept agent Schmidt's testimony that he observed Williams approach the driver's door of a blue and white pickup truck in a manner consistent with conducting a drug transaction. It is undisputed that Williams and Roberds were both in the Lincoln when it was pulled over by agent Schmidt.

Paragraph 13 of the affidavit states that Williams was in the second row of seats in the vehicle, and that fact is not disputed by Williams. Paragraph 13 states that agent Schmidt observed both Williams and Roberds looking at his vehicle as they turned from West 23rd Avenue onto North Star Street. There is no reason to conclude that that statement is false, although it is not particularly significant.

When viewed under the totality of the circumstances, the Schmidt affidavit contains sufficient probable cause to satisfy the Fourth Amendment. The role of the issuing magistrate is not to determine that the evidence sought is in fact on the premises to be searched, rather that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985), *overruled on other grounds sub nom* Gomez v. United States, 490 U.S. 858 (1989). Here, the magistrate was entitled to draw reasonable inferences about where evidence was likely to be kept based on the totality of the circumstances. It was reasonable to conclude that contraband or evidence of a drug transaction would be found in the residence which Roberds had left before participating in the alleged drug transaction conducted by Williams. The Schmidt affidavit set forth the agent's surveillance, observations, and search of the Lincoln Navigator which provided probable cause aside from the plain view observations of agent Sokel stated in the affidavit. As in Segura v. United States, 468 U.S. 796 (1984), the information known to the agents before the initial entry into the apartment was sufficient to purge the evidence subsequently seized under the warrant of any potential taint resulting from the earlier entry. *Id.* at 816.

//

## Conclusion

Because the court determines that the warrantless entry was justified, no further consideration need be given to whether the evidence seized under the search warrant would be admissible under the independent source doctrine as argued alternatively by the government.[2]

Because the court concludes that no defendant has shown that agent Schmidt's affidavit contains intentionally or recklessly false statements or misleading omissions, the challenged portions of the affidavit, namely paragraphs 12 and 13 need not be excised from any consideration of the affidavit for probable cause.

For the foregoing reasons, the motion to suppress evidence, Docket entry 234 with joinder of Roberds at Docket entry 256, as well as Williams' second motion to suppress physical evidence, Docket entry 254, are without merit and should be denied.  IT IS SO RECOMMENDED.

DATED this 19th day of May, 2006 at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

---

[2] The government argues alternatively that even if agent Solek's plain view observations are excised from the Schmidt affidavit, it is clear that the search warrant for apartment 28 is supported by sufficient probable cause.

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, May 26, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Thursday, June 1, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).