NELSON P. COHEN
United States Attorney

CRANDON RANDELL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone:(907) 271-5071
Fax: (907) 271-1500
email:crandon.randell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-cr-76-04-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| RODERICK WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW plaintiff United States of America, by and through counsel, and hereby submits this Sentencing Memorandum.

1

Roderick Williams stands convicted by jury of two counts of drug related offenses. With regard to the Conspiracy conviction, the jury, in a special verdict, determined that Williams was responsible for a total of five kilograms, or more, of cocaine; 50 grams, or more, of cocaine base, and a detectable amount of "MDMA" – Ecstasy – 62.6 grams per the lab report. PSR, ¶ 17. When converted into Guidelines language, the result is a base offense level of 32. *Id.*, U.S.S.G. §2D1.1(c)(4).

The Presentence Report adds another two levels for Obstruction of Justice, U.S.S.G. §3C1.1. The presentence report author concluded that Williams obstructed justice during the course of prosecution of the instant offense of conviction "by conspiring with a co-defendant (the inimitable Calvin "Special K" Washington) to produce a false sworn document purporting to exculpate Roderick Williams from any involvement in the drug conspiracy." PSR, ¶ 21. The government agrees with this conclusion. After being indicted for witness tampering, based upon the accusation of Calvin "Special K" Washington, Williams, at trial, summoned a string of jailbirds who testified, quite convincingly, that the phony affidavit was, in fact, nothing more than a amateurish effort cooked up by Williams and Washington to scam the system.

2

(Parenthetically, it should be noted that Williams complains about the failure of the report author to accord him "minor participant" status pursuant to U.S.S.G. §3B1.2(b). As correctly noted in the PSR, Roderick Williams was present at the airport, in the dead of night, along with "Special K" in one car, and co-defendant Byron Williams in another car, to meet and greet the Seattle based cocaine mule, LaTonya Stuckey, laden with 500 grams of powder cocaine. Another defendant, Shirlee Kakaruk, testified at trial that she had "obtained cocaine and cocaine base from Roderick Williams on multiple occasions." Addendum to the Presentence Report, pg. 2.

Minor participant? Hardly. Roderick was an able and conscientious street level dealer. Co-defendant Byron Williams, a kilo level dealer, was the guy who had the drug source in Seattle, put together the network to get the stuff here, and then parceled it out to guys like Roderick. Byron brought it to town, Roderick put it on the street.)

The Total Offense Level, therefore, is 34. PSR, ¶ 27. Based upon a total offense level of 34 and a criminal history category of **V**, the guideline imprisonment range is 240 – 293 months.[1]

---

[1] Roderick's range would have commenced at *235* months but for the statutory minimum of 20 years occasioned by the special jury finding, and the 21 U.S.C. § 851 filing. PSR, ¶¶ 133 & 135.

CRIMINAL HISTORY

The Criminal History of Williams is extensive – and revealing. He kicks off his career at age 17, with a conviction for leaving the scene of an accident after driving a vehicle "while his license was cancelled." PSR, ¶ 31. He thereafter motors through another six (6) vehicle related convictions by the age of 21. What is most fascinating about the early years of Roderick's career is that he never, as the expression goes, showed up to face the music. In <u>each</u> of his first seven offenses the court found it necessary to issue a bench warrant for Roderick's arrest after he "failed to appear." PSR, ¶¶ 31– 37.

In 1992, at the age of 23, Williams graduated into another criminal realm, one that he has inhabited ever since, battering and assaulting women. In August of 1992, Williams was involved in an assault on an employee of Lamonts, a department store in Anchorage. On October 1, 1992, a bench warrant was issued for his arrest as he "failed to appear for arraignments." PSR, ¶ 38, pg. 8.[2]

In 1998, Williams was convicted of Assault in the Fourth Degree for "recklessly and repeatedly striking [a former girlfriend] about the head and arms with the grip of a small-frame handgun, . . ." PSR, ¶ 39. The Court of Appeals, in a

---

[2] *Another* bench warrant was issued, on February 28, 1994, because defendant "failed to appear for an execution of sentence hearing." PSR, ¶ 38, pg. 9.

Memorandum Opinion and Judgment, observed that "Williams demonstrated at sentencing that he was unwilling to accept responsibility for his conduct and that he had no remorse for his actions. <u>Moreover, he blamed the victim for what had happened</u>." PSR, ¶ 39, pg. 10 (emphasis supplied). This last comment by the Court weighs heavily when considering the factors in 18 U.S.C. § 3553, especially section (a)(2)©, the need "to protect the public from further crimes of the defendant." If the conduct, i.e., beating a woman with a steel metal handgun, was not his fault, then, necessarily it cannot be a crime, and therefore, it is more than likely to occur again.

      In 2002, Williams was convicted of another assault, this time in the State of Washington. The victim was a lady friend, and children were present at the time.[3] To bring home and reinforce the lesson, Williams stripped the victim of her jewelry and cell phone, and then ran over them with his vehicle. He later "threw the smashed jewelry out the window." PSR, ¶ 41, pg. 12. Ordered by the court to not contact the victim, Williams proceeded to ignore the order, instead calling the victim forty-three times "from the defendant's jail housing area . . . ." This offense, according to the PSR, cost the defendant "44 days jail w/0 days suspended." PSR, ¶ 42.

---

      [3] Williams does not beat up men, he specializes in beating up women.

Also in 2002, at age 32, Williams nailed his first felony drug conviction, selling cocaine. PSR, ¶ 43. In October of 2003, Williams, serving time for the cocaine sales, "walked away from his work site." PSR, ¶ 44, pg. 16.

In 2005, Williams beat up his current girlfriend (and present co-defendant) Paula Roberds. This latest beating netted Williams only six months – "360 days jail w/180 days suspended . . . [with] no contact with Paula Roberds." PSR, ¶ 45. Williams, characteristically, "told police he had done nothing." It was, in fact, another "girlfriend of his" who had beaten Paula. *Id*. at pg. 19.

The Presentence Report contains a section entitled <u>Other Arrests</u>. PSR, pg. 20. The idea here is to give the court an inkling of other criminal activity, if any, indulged in by a defendant, which activity has not resulted in conviction(s). The object is to present an accurate and balanced picture of the defendant, with the goal being to assist the court in fashioning an appropriate sentence.

For Roderick Williams, the <u>Other Arrests</u> section, normally a throwaway, is fertile territory indeed. It runs 12 pages long, and is highlighted by a four man, hours long, sexual assault upon a fifteen year old girl. *See* PSR, ¶¶ 52 – 65, pgs. 20 – 31. Williams admitted engaging in an act of fellatio with the victim, but "characterized it as consensual act." PSR, pg. 25.

## EVALUATION

Roderick Williams is a career criminal, and a violent career criminal, who has evidenced no interest in doing anything other than operating outside the law, and outside society norms. It is clear, from the record, that Williams has not, and will not, engage in legitimate enterprise.[4] More importantly, it is also clear that Williams cannot be dissuaded from physically abusing women.

The court must consider the factors in 18 U.S.C. § 3553 in determining a sentence. Subsection (a)(2)(A) talks about the need "to reflect the seriousness of the offense, . . . and to provide just punishment for the offense." Subsection (a)(2)(B) discusses the need to "afford adequate deterrence to criminal conduct." Subsection (a)(2)© is the section, for Roderick Williams, most pertinent – the need "to protect the public from further crimes of the defendant." This guy is dangerous to society, and especially so to those members of the most vulnerable gender, women.

---

[4] Williams, in more than 24 years of availability to the local job market, has grossed a grand total of $8,859.00. That amount averages out to be . . . **$369.12 per year**. PSR, ¶¶ 99 – 122. In comparison, Social Security will, should Williams make it that far, provide him a veritable bonanza.

RECOMMENDATION

The government recommends a sentence in the mid to upper range of the guidelines, somewhere from 266 to 293 months. Supervised Release must be for a period of ten years. PSR, ¶ 137.

RESPECTFULLY SUBMITTED this 21st day of September, 2006, at Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/Crandon Randell
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
(907) 271-5071
(907)271-1500
email: crandon.randell@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on September 21, 2006 a copy
of the foregoing was served electronically on:

Lance Wells

s/ Crandon Randell